UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **KELLI KELLY** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>**COMMISSIONER** )<br>)<br>**Defendant.** | Case No.:  4:20-cv-1245-LCB |

## MEMORANDUM OPINION AND ORDER

On August 24, 2020, Kelli Kelly filed a complaint seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  The parties have fully briefed the case, and it is now ripe for review.  For the following reasons, the Commissioner's final decision is due to be reversed and the case remanded for further proceedings.

### I. Background

On July 3, 2018, Kelly protectively filed a Title II application for a period of disability and disability insurance benefits.  She also protectively filed a Title XVI application for supplemental security income on the same day.  In her application, Kelly alleged disability beginning February 13, 2018.  After her claims were initially

denied on November 9, 2018, Kelly requested a hearing before an Administrative Law Judge ("ALJ"). After reviewing Kelly's earnings record, the ALJ determined that Kelly had acquired sufficient quarters of coverage to remain insured through December 31, 2022. Thus, the relevant inquiry was whether Kelly was disabled between her alleged onset date and December 31, 2022.

Kelly, represented by counsel, appeared at the hearing on October 25, 2019. The ALJ heard testimony from Kelly and from Lisa Atkinson, a Vocational Expert ("VE"). After hearing the testimony and considering Kelly's medical records, the ALJ issued an unfavorable decision on November 12, 2019. The Commissioner's decision became final when the Appeals Council denied Kelly's request for review. This lawsuit followed.

## II.     The ALJ's Analysis

After the hearing, the ALJ issued a written opinion explaining his decision. (Tr. 15-25).[1] In issuing his decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. 20 CFR 416.920(a). The ALJ follows the steps in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

---

[1] References to "Tr" denote the page numbers appearing on the transcript prepared by the Commissioner and submitted with her Answer. *See* (Doc. 7).

The first step of the five-step analysis requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Kelly had not engaged in substantial gainful activity since February 13, 2018, her alleged onset date. (Tr. at 17). Accordingly, the ALJ moved on to the second step.

At step two, ALJs must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id.* If a claimant does not have a severe impairment, she is not disabled, and the inquiry ends. Here, the ALJ found that Kelly had the following severe impairments: neurofibroma, status-post thigh mass extraction, foot drop, and neuropathy. (Tr. at 18). The ALJ found that Kelly's carpal-tunnel syndrome, bipolar disorder, and anxiety were not severe. (Tr. at 18-19).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's

3

impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Kelly's impairments did not meet or equal any of the listed criteria and, therefore, proceeded to step four. (Tr. p. 19).

Step four of the evaluation requires an ALJ to determine the claimant's residual functional capacity ("RFC"), and whether she has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged onset date. If a claimant has the RFC to perform past relevant work, she is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In this case, the ALJ found that Kelly did not have the RFC to perform her past relevant work as a Certified Nursing Assistant. Therefore, he proceeded to the final step of the evaluation process.

At the final step, the ALJ must consider whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If a claimant can do other work, she is not disabled; if not, she is disabled. According to the ALJ, Kelly had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can only stand and walk up to two hours in an eight-hour day, can occasionally perform postural maneuvers, never climb ladders, kneel, or crawl, and should avoid all industrial hazards such as unprotected heights and moving machine parts, and operation of motor vehicles.

(Tr. 19-20). After hearing testimony from the VE, the ALJ determined that there were jobs existing in significant numbers in the national economy that Kelly would be able to perform given her RFC, age,[2] education, and work experience. Specifically, the ALJ opined that Kelly could perform the work of an order clerk, a parimutuel ticket checker, or a sorter. (Tr. 24). Therefore, the ALJ concluded Kelly was not disabled as defined by the Social Security Administration.

### III.   Standard of Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is supported by substantial evidence, even if the evidence preponderates against the

---

[2] Kelly was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. 20 CFR §§ 404.1563 and 416.963.

Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In considering a claimant's subjective testimony, an ALJ must first determine whether the claimant has "evidence of an underlying medical condition." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. § 404.1529. Once a claimant shows an underlying medical condition, she must show either: (1) "objective medical evidence that confirms the severity of the alleged pain arising from that condition," or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt*, 921 F.2d at 1223 (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

The ALJ must also consider symptoms without objective medical support if the claimant alleges these symptoms during the proceedings. 20 C.F.R. § 404.1529(c)(3). Specifically, the ALJ must consider the claimant's subjective testimony regarding the "effectiveness and side effects of any medications." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv); 416.929(c)(3)(iv) ). The ALJ fails to consider the side effects of medications when he does not (1) elicit testimony about the side effects and (2) make a finding about "the effect of ... prescribed medications upon [the claimant's] ability to work." *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).

If an ALJ discredits a claimant's subjective testimony, he must articulate his reasons and substantial evidence must support those reasons. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### IV. Kelly's Arguments

In her brief, Kelly argues that the ALJ failed to adequately consider her testimony concerning the side effects of her medications. (Doc. 9 at 32). Kelly correctly noted that the ALJ made a finding that "[i]n order to alleviate the symptoms of her impairments, the claimant asserted that she has taken several medications, and she reported sleepiness and grogginess as side effects of her mental medications." (Tr. at 20). According to Kelly, the ALJ did not go on to consider how the medications affected her ability to work. The Court agrees.

During the hearing, Kelly's attorney asked if she experiences side effects from any of her medications. Kelly replied, "Yes. The Zoloft makes me very sleepy and kind of groggy like I'm dysfunctional." (Tr. at 47). She reported that she takes the medication once every morning as directed. *Id*. Aside from the lone sentence quoted above, the ALJ did not specifically mention this issue again.

An ALJ must, at the very least, make "a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored." *Cowart*, 662 F.2d at 737, (quoting *Figueroa v. Secretary of HEW*, 585 F.2d 551, 554 (1st Cir. 1978)). In *Cowart*, the claimant testified that her

7

medication caused her to be "kind of zonked most of the time." *Cowart*, 662 F.2d at 737. The Eleventh Circuit held that it was "conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability." *Id*. But, the court held, the ALJ's failure to make any findings regarding the claimant's testimony was reversible error. *See id*.

Here, the ALJ did not make any findings or conduct any analysis regarding Kelly's testimony concerning the side effects of her medication. Though the ALJ acknowledged her testimony about the side effects towards the beginning of his decision, he never mentioned it again. In reviewing the entirety of the record, the Court notes that the side effects of Kelly's Zoloft were not the crux of her argument as to why she is unable to work. Rather, Kelly's main contention was that she was disabled as the result of a malignant tumor that was removed from a nerve in her leg. The Commissioner argues in a footnote that the ALJ was not required to further investigate the side effects of Kelly's medications because she "did not mention side effects from [her] medications as a basis for disability when [s]he applied for SSI or at [her] hearing." (Doc. 10 at 15, n. 6). However, this is false. As noted above, Kelly did testify at her hearing that one of her medications made her sleepy, groggy, and dysfunctional. (Tr. at 47). Thus, Kelly raised the question, and the ALJ was required to make findings on the issue. His failure to do so prevents this Court from determining whether Kelly's testimony on this issue was anything but "entirely

ignored." *See Cowart*, 662 F. 2d at 737. The Commissioner did not point to any portion of the ALJ's decision that would change this conclusion.

Kelly also asserted that the ALJ failed to give proper weight to the opinion of one of her physicians. However, because the Court is reversing the Commissioner's decision and remanding for further proceedings based on the issue discussed above, it pretermits any discussion of that issue at this time.

## V.  Conclusion

For the foregoing reasons, it is ordered that the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order. A final judgment will be entered separately.

**DONE** and **ORDERED** March 17, 2022.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE